WELLS et al. v. TIMMS et al.    (No. 11163.)*

(Court of Civil Appeals of Texas. Fort Worth. May 9, 1925. Rehearing Denied. June 6, 1925.)

**1. Deeds ⊜⇒17(1)—Deed by wife, sole beneficiary of testator's will, to his heirs held supported by consideration.**

Where deceased husband had willed property, both real and personal, to wife, wife's deed to real estate to children and stepchildren, reciting consideration of $1, which was never paid, was supported by sufficient consideration, where it was executed pursuant to contract whereby wife was to get personalty, and grantees were to pay expenses incident to probate of will, even without considering agreement by grantees not to contest will.

**2. Evidence ⊜⇒419(2)—Parol evidence admissible to show real consideration of deed.**

In suit to cancel deed reciting consideration of $1, which was never paid, parol evidence is admissible to show real consideration.

**3. Deeds ⊜⇒17(1)—Forbearance to sue good consideration, if in good faith and on reasonable grounds.**

Forbearance to sue, to be good consideration, must be upon right asserted in good faith, and as to contention which party relying on forbearance had reasonable grounds for believing would be upheld.

**4. Deeds ⊜⇒210—Evidence held to show that proposal to contest will, abandoned in consideration of deed, was made in good faith.**

Where deceased husband had willed estate, both real and personal, to wife, who deeded real estate to children and stepchildren on consideration that they refrain from contesting probate of will, evidence held to justify presumption that grantees were acting in good faith in proposing to contest will, and therefore consideration supported deed.

**5. Husband and wife ⊜⇒267(7)—Wife deeding land is in no better position to recover community land than other land.**

In suit by wife, to whom husband had willed estate both real and personal, to cancel her deed to all of land, executed to children and stepchildren in consideration of their forbearance to contest will, wife is in no better posi-

tion to recover portion of land that was community property than other land.

**6. Cancellation of instruments** ⊜⟶35(1)—**Testator's posthumous child held not concerned with suit by wife to cancel deed to children, executed on consideration of forbearance to contest will in which she was sole beneficiary.**

In suit by wife to cancel her deed to children and stepchildren, made in consideration of their forbearance to contest will making her sole beneficiary, failure of court to have testator's posthumous child represented in suit and to decree recovery for it was not error, settlement being one solely between plaintiff and grantees in deed.

**7. Deeds** ⊜⟶211(3)—**Evidence held not to disclose fraud in procurement of deed of wife in consideration of forbearance to contest will.**

In suit by wife to cancel deed to children and stepchildren, executed in consideration of their forbearance to contest husband's will, making her sole beneficiary, on grounds of fraud, evidence *held* to sustain judgment for defendants.

Appeal from District Court, Throckmorton County; Bruce W. Bryant, Judge.

Suit by Mrs. Julia Wells and husband against J. C. Timms and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

T. R. Odell, of Throckmorton, and Dickson, Newton & Dickson, of Seymour, for appellants.

Reynolds & Howsley, of Throckmorton, and M. S. Long, of Abilene, for appellees.

BUCK, J. Mrs. Julia Wells, plaintiff below and appellant here, filed suit in the district court of Throckmorton county against J. C. Timms and a number of other defendants, defendants James F. Timms and Flora A. Timms being her own minor children, and the other defendants being the stepchildren of the plaintiff, the children of J. E. Timms, deceased, by his first and second marriages, plaintiff being his third wife. She pleaded in the first count in the form of trespass to try title to 272 acres of land situated in Throckmorton county. In a second count she pleaded that theretofore, on December 11, 1919, plaintiff was the owner in fee simple of a described tract of land, and that her former husband had recently died, and she was overcome with grief, having been left with her two little children and with child at the time of the death of her husband; that she had no blood relatives near her to advise her, and she was afraid to call upon them for fear of causing trouble between them and her stepchildren, and at said time she was totally ignorant of the fact that her husband had willed her the entire estate in fee simple; that on said December 11th, and at former times, defendant J. C. Timms, her stepson, called upon plaintiff at her residence, with wrongful and

fraudulent design of obtaining said land for himself and for the other defendants, without consideration, and falsely, deceitfully, and fraudulently represented to her that her late husband, J. E. Timms, had made some sort of a will, but that B. F. Reynolds, the county judge of Throckmorton county, at the time had said to him that said will was not worth the paper it was written upon; that he falsely, deceitfully, and fraudulently told plaintiff that she could get only a child's part of the land and property of her deceased husband, and that it would be best for her to get up and leave to avoid trouble; that if any of her relatives were called in as advisers it would likely cause trouble; that said J. C. Timms further advised plaintiff to accept the personal property of the estate of J. E. Timms, her deceased husband, as her part, a child's part, and leave the land to the children; that said plaintiff, being entirely ignorant of the fact that all of said property had been willed to her by her husband, and that said will had been probated and held valid at the time of said fraudulent representations to her by the said J. C. Timms, and all title to the said estate, both real and personal, was at that time vested in the plaintiff, executed a deed to the defendants, the same being her stepchildren, by former marriages of her deceased husband, and her own two children. She further alleged that she was raised a poor girl in the country without education or school training, and had had no business experience whatever, nor had she had anything to do with court proceedings, and did not know what was meant by probating a will, and relied on the false and fraudulent statements and representations of defendant J. C. Timms, and that said Timms knew that said representations were false and fraudulent at the time he made them.

She further alleged that G. C. Eaton was asserting some kind of claim to a portion of said land, and she prayed that he be made a party defendant. She further pleaded that the defendants paid her no consideration for the said described land and the execution of the deed thereto. Wherefore, she prayed that she have judgment for the title and possession of said land, that a writ of restitution issue, and for the rents, damage, and costs of suit, and that said deed theretofore executed by her be canceled, set aside, and annulled and held for naught.

The defendants, by various pleas, denied the allegations of the plaintiff's petition, alleging fraudulent representations on the part of defendant J. C. Timms, or any other person, to induce plaintiff to execute the deed. They pleaded that, at the time of the execution of this deed, and prior thereto, they were contemplating a contest of the will of their father, J. E. Timms, and would have contested it but for the agreement entered into between the plaintiff and the defendants, by the

terms of which plaintiff accepted as her part of the estate of her deceased husband all of the personal property, and executed to the defendants a deed to the land. The minor children of the plaintiff and her deceased husband were represented by an attorney, ad litem, and another minor, the child of one of the sons of plaintiff's deceased husband, was represented by a guardian.

The cause was tried before a jury, and the jury found: (1) That the plaintiff knew or understood at the time she executed the deed, dated December 11, 1919, to J. C. Timms and the other defendants, conveying to said defendants the land in controversy, that J. E. Timms had left a will bequeathing to her all his property both real and personal; (2) that the defendant J. C. Timms did not represent to the plaintiff, prior to the time she executed the deed, that she, plaintiff, could only get a child's part of the estate of her deceased husband, under the will of J. E. Timms; (3) that J. C. Timms did not represent to the plaintiff that the last will and testament of her deceased husband was no good and invalid; (4) that when the plaintiff executed the deed to J. C. Timms and the other defendants, she did not understand that she was conveying only a child's part of the land described in said deed.

Judgment was entered for the defendants upon this verdict, and the plaintiff has appealed.

[1] The deed from plaintiff to defendants recited the consideration therefor to be $1, and that the grantees, heirs of J. E. Timms, deceased, had conveyed to grantor all right, title, interest, and claim in and to all personal property owned by said J. E. Timms at the time of his death. The evidence shows that the $1 recited consideration was not paid. Appellant's first four propositions, urged as showing fundamental error, are directed at the failure of the trial court to peremptorily instruct the jury to return a verdict for plaintiff, on the ground that inasmuch as the evidence shows that the $1 recited consideration was not paid, and that plaintiff, under the will of her deceased husband, was entitled to all of his estate, both real and personal, that no consideration is shown for the deed.

Defendants pleaded a consideration, in that in addition to their promise to forbear to contest the will, and their failure so to do, that they agreed to pay and did pay the costs of the probate of said will, including the attorney's fee. This plea is sustained by the evidence.

A contract of agreement was entered into between plaintiff and defendants on December 11, 1919, by the terms of which the personal property, including $907.15 in the bank in the name of J. E. Timms, and the mules, horses, calves, 11 bales of cotton, etc., amounting to $2,885 was to be given to plaintiff, and the 272 acres of land, shown to have been of the reasonable market value of $8,160, was to be deeded to the defendants. In this contract the defendants agreed to pay all the expenses incident and necessary to the probate of the will.

[2] Parol evidence is admissible to show the actual consideration of the deed. Taylor v. Merrill, 64 Tex. 494; Mayer & Schmidt v. Wooten, 46 Tex. Civ. App. 327, 102 S. W. 423; McLean & Curry v. Ellis, 79 Tex. 398, 15 S. W. 394; G., H. & S. A. Ry. Co. v. Pfeuffer & Ireland, 56 Tex. 66. A defendant may show that the true consideration was not stated in the deed, and he may prove what it was in fact. White v. Street, 67 Tex. 177, 2 S. W. 529. The recital in a deed of the amount paid by a purchaser is not conclusive, and the real consideration may be shown by parol evidence. Glenn v. Mathews, 44 Tex. 400. The recital of the consideration in a deed is placed upon the footing of a receipt, and, like other receipts, is capable of being explained or contradicted by other evidence. Lanier v. Foust, 81 Tex. 186, 16 S. W. 994. We think that the consideration expressed in the contract between the parties, and shown by the evidence to have been paid for the probate of the will, is sufficient to sustain the deed as to the consideration, even without the consideration of the agreement, shown to have been carried out on the part of the defendants not to contest such probate.

[3] Under the head of "Relinquishment of Right," under the general subject of "Contracts," 6 R. C. L. p. 658, it is said:

"It is not essential that the consideration should import a certain gain or loss to either party. It is sufficient if the party in whose favor the contract is made foregoes some advantage or benefit, or parts with a right which he might otherwise exert."

On page 659 of the same work, it is said, under the subhead of "Forbearance to Sue":

"It is declared in some decisions that to constitute a legal contract to forbear there must be a valid promise to do so, so that for some time the holder of the debt has no right to maintain an action on it, and that it is not sufficient to show that he did forbear. Under this view, the mere forbearance to sue, without an agreement to that effect, is not a sufficient consideration for a promise to pay the debt of the person liable, even though the act of forbearance was induced by the promise. But in view of the principle that an act may be a good consideration for a promise, it would seem that this rule would be applicable only to cases in which the person forbearing had not been requested to do so. * * * It is not necessary that the promisor should be benefited by such forbearance. Therefore, forbearance to sue is a sufficient consideration for the promise of a third person. As a promise may be a sufficient consideration for a promise, there seems to be no dissent from the proposition that a promise to forbear to sue is a sufficient consideration for the promise of the debtor or of a third person, and that a promise to forbear may be implied from the conduct of the parties and the nature of the transaction."

In Elliott on Contracts, vol. 1, page 403, § 235, it is said:

"An agreement to withhold suit either at law or in equity is a sufficient consideration to support a promise, although no fixed and definite time is expressly agreed upon."

On page 407 of the same work, it is said:

"While it is definitely settled that a promise to refrain from resorting to legal means to enforce a valid obligation may furnish a sufficient consideration for a promise yet if the claim threatened to be enforced is invalid and worthless, a promise not to attempt to enforce or to refrain from making trouble concerning it is not a consideration recognized by the law as valuable. This doctrine was originally given a rigorous application, but it has been very materially modified by subsequent cases, and it is now held that it is not necessary in a suit on a promise given in consideration of a forbearance from suit that it should appear that there was a good cause of action or a fair and reasonable ground of success in the threatened suit. Forbearance to sue on a claim known to be frivolous and vexatious is not a sufficient consideration for the reason that the promotion of such suit would be or could be found to be either fraudulent or wanting in good faith, but, short of that, forbearance to sue is a good consideration for a promise founded thereon. It is only essential that the claim be doubtful either in law or equity and asserted in good faith."

In Von Brandenstein v. Ebensberger, 71 Tex. 267, 9 S. W. 153, it is said, quoting from the headnote:

"An agreement to forbear to prosecute a suit to enforce a well-founded claim in law or equity is a sufficient consideration to support a promissory note of the debtor or of a third person, when the creditor, in pursuance with such agreement, has forborne as agreed upon."

In 13 Corpus Juris, page 342, it is said:

"The waiver of a right to forbearance to exercise the same is a sufficient consideration for a promise made on account of it. The right may be legal or equitable, certain or doubtful, provided it be not utterly groundless, questions of motive being within this limit immaterial; and it may exist against the promisor or against a third party. But forbearance to do, or a promise to forbear from doing, that which the promisee cannot legally do, is no consideration for a promise to refrain from an act which, while perhaps not forbidden by law, is reprehensible on the grounds of policy and sound morality will not support a contract."

See the same work on pages 344 et seq., for a full discussion of the question of forbearance to sue as a consideration, and of the different views held by the different courts. The early English cases were to the effect that one has a right to sue only when his claim is actually in law a valid claim, and that forbearance to sue on an unfounded claim can never support a promise given therefor, for the reason that forbearance to sue on a claim not legally enforceable can be no detriment. But the principle followed in perhaps the

majority of cases is that one has a right to sue where his claim is reasonably doubtful, and that forbearance to enforce a claim which might reasonably be thought doubtful is a sufficient consideration, on the ground that "the reality of the claim which is given up must be measured, not by the state of the law as it is ultimately discovered to be, but by the state of the knowledge of the person who at the time has to judge and make the concessions." A third view is that one has a right to sue when he believes that he has a good cause of action; that it is enough if plaintiff can show that, at defendant's request, he forbore to prosecute a claim which he believed to be well founded, and that it is no answer to show that the claim was not well founded or was not even reasonably doubtful. Citation of authorities from the United States Supreme Court, and a number of states, and from England, etc., is given upholding this last expressed view. But apparently the Texas decisions, in effect, uphold the statement of the rule as shown in Von Brandenstein v. Ebensberger, supra; i. e., that the forbearance to sue, to be a good consideration, must be upon a right asserted in good faith, and as to a contention which the party relying on the forbearance had reasonable grounds for believing would be upheld.

In Gauss-Langenberg Hat Co. v. Alley, 154 S. W. 1062, writ of error refused, the Amarillo Court of Civil Appeals quoted with approval from the case of Wilson v. Eaton, 127 Mass. 174, by the Supreme Court of that state, as follows:

"The judge before whom this case was tried without a jury has found as a matter of fact that the surrender to the administratrix of the note of her intestate was the consideration for the note made by her to the plaintiff. The surrender of the former note, whether that note was at the time of the surrender capable or incapable of being enforced at law, was sufficient to constitute a consideration for the new note."

[4] The evidence as to the grounds upon which the children of the deceased, J. E. Timms, expected to rely in their proposed contest of the probate of the will is not shown in the statement of facts, but there is proof that J. E. Timms was quite old at the time of his death, the evidence showing that he was 75 years old, and had for a year prior to his death been in ill health, confined to his room or house most of the time, and not able to work. We think there is enough evidence in the record to justify a presumption that the defendants were acting in good faith in proposing to contest the probate of the will, and that it is not certain that said contest would be ineffectual. Therefore, we overrule propositions 1 to 4 inclusive.

[5] The appellant's fifth proposition is that the undisputed evidence shows that 32 acres of land conveyed by plaintiff to defendants was the community property of plaintiff and

her deceased husband, purchased during the period of their marriage, and that at least as to this 32 acres she was entitled to recover. We do not see any difference between her right, if such she had, to recover the 32 acres and the 272 acres. The consideration sustaining the conveyance of the 240 acres would have also sustained the conveyance of the 32 acres. The contract entered into by the plaintiff and the defendants, and the subsequent conveyance by plaintiff to the defendants of the land in controversy, was all part of an effort to compromise and settle the difference between the opposing parties. If the agreement on the part of the defendants to give the plaintiff all of the personal property, and to relinquish any right that the defendants might have had to such property as heirs of their father under the laws of descent and distribution, and the agreement to pay the costs of the probate of said will, was sufficient to sustain the deed subsequently executed by plaintiff to a portion of the land, it would be sufficient to sustain the deed to the entire acreage. If any part of this personal property belonged to the separate estate of the husband, the widow would have been entitled to only one-third of such separate personal property, and the balance would have gone to the children of the deceased and their descendants. The widow would have been entitled to an estate for life in one-third of the real estate belonging to the separate estate of her deceased husband. Article 2462. Rev. Stats. It does not appear from the statement of facts what portion of the personal property, if any, belonged to the community, but evidently the right to some portion, at least, of it was claimed by the defendants as heirs of their deceased father.

This assignment is overruled.

[6] The evidence shows that some seven or eight months after the death of J. E. Timms the plaintiff gave birth to a third child. It is claimed that, inasmuch as the pleadings and testimony mentioned the birth of this posthumous child, the failure of the court to have this child made a party to the suit, and a guardian ad litem appointed to represent it, and to decree a recovery for it, constitutes reversible error. We do not think so. The evidence shows that the original controversy was between the plaintiff and her stepchildren. Said stepchildren were contending that they had an interest in and a right to at least a portion of the estate left by their father. The plaintiff was entitled to hold the same by reason of the will, if it should be held entitled to probate. The testimony of the defendants' witnesses was that when the question at issue was raised by J. E. Timms,

acting for the defendants, that the plaintiff said, in effect, that she thought that, as the children had worked with their father and mothers to acquire the land in the first place and to improve it, they ought to have it. But she further said that she thought her two children, then born, were entitled to share in the real estate. The defendants agreed to this, and further agreed to give to the plaintiff all of the personal property, and this agreement was incorporated in a written contract, and the defendants withdrew all objection to the probate of the will, and, in fact, assisted in such probate. There was no question involved as to the right of the child subsequently born. It was merely a settlement between the plaintiff and her stepchildren. The appellant has cited us to the cases of Nail v. Taylor (Tex. Civ. App.) 223 S. W. 719, Barmore v. Darragh (Tex. Civ. App.) 227 S. W. 522, and Bonner v. City of Texarkana (Tex. Civ. App.) 227 S. W. 505, to sustain this contention, but we do not believe they are applicable to the facts in this case, and the contention is overruled.

[7] Nor do we think we can reverse the judgment on the ground that there was no evidence to support the judgment for defendants in the court below, or because the right of plaintiff to recover was shown by a great preponderance of the evidence. Her ground to set aside the deed and to recover the land was based almost entirely on her contention that she had been defrauded, misled, and deceived by representations on the part of J. C. Timms, and to some extent on the part of G. C. Eaton. But not only did these witnesses contradict the plaintiff's testimony as to the alleged fraudulent representations, but Judge Reynolds, who wrote the will, testified that he went out to the Timms house, and, after getting the information from Mr. Timms, wrote out the will and read it over to Mr. Timms, and that the plaintiff was present within a few feet of him when he did so; that after the death of Mr. Timms the plaintiff was in his office with J. C. Timms and Mrs. Blackstock, a stepdaughter, and that plaintiff wanted him to give his advice in regard to the contract; that he explained the contract, and read it aloud to her; that he told her that the property had all been willed to her, and that she did not have to make the contract unless she wanted to. But she said she did not want the land— she wanted the children to have it. We do not feel that we can disturb the verdict of the jury and the judgment of the court on the evidence.

All assignments are overruled, and the judgment is affirmed.